# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ANNA MARIE PACHECO ROBINSON,**

    **Plaintiff,**

vs.                                                                                **No. CIV 01-0537 LCS/KBM**

**MESILLA VALLEY HOSPITAL,**
**TOMMEY WILHITE, DEBBIE**
**LARSSON, and JOHN DOES 1**
**TO 10, Inclusive,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Mesilla Valley Hospital's Partial Motion to Dismiss (Doc. 15), filed January 11, 2002. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the pleadings, briefs, arguments of counsel, relevant law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED**.

**I.**    **Background.**

Plaintiff, an Hispanic female, alleges that she was employed as a registered nurse at Mesilla Valley Hospital (MVH) from April 1989, until October 22, 1999. (Compl. ¶ 12.) Plaintiff received exemplary work evaluations during her employment, and never had a bad evaluation. (Compl. ¶ 13.) On March 17, 1999, Defendant Wilhite learned that Plaintiff's husband is African-American. (Compl. ¶ 14.) Wilhite later made racially biased comments and gestures in the presence of other employees. (*Id*.) In June 1999, Plaintiff showed Wilhite a photo of Plaintiff and her husband with the President and First Lady, and indicated that the photo was taken when Plaintiff's family was selected as the

Southwest Hispanic Family of the Year. (Compl. ¶ 15.) Wilhite laughed and returned the photo to Plaintiff. (*Id.*) Wilhite made remarks about "blacks, hispanics and gays" in the presence of other employees. (*Id.*) "Following that incident, Wilhite began a campaign of mistreatment of Robinson, creating a hostile work environment and speaking to Robinson in a rude and insolent manner, including rude remarks about Robinson's children." (Compl. ¶ 17.)

On August 24, 1999, September 17, 1999, and September 20, 1999, Plaintiff submitted communications to MVH's Risk management regarding staffing concerns about safety issues at MVH. (Compl. ¶ 19.) On September 30, 1999, Plaintiff was called into Wilhite's office for a meeting with Wilhite and Larsson. (Compl. ¶ 20.) During the meeting Wilhite verbally assaulted and berated Plaintiff in the presence of Larsson and yelled so loudly at Plaintiff that her words were audible outside the office. (Compl. ¶ 21.) Wilhite told Plaintiff that she could find work elsewhere if the working conditions were too dangerous at MVH, and issued a written counseling report to Plaintiff. (Compl. ¶ 22.) In the counseling report, Wilhite stated that Plaintiff's actions resulted in low employee morale, reflected poor leadership on the part of Plaintiff, and engendered distrust of Plaintiff by her supervisors. (Compl. ¶ 23.)

Following the meeting with Wilhite and Larsson, Plaintiff was distraught, emotionally broke down, and was temporarily unable to return to work. (Compl. ¶ 24.) Due to the mistreatment, Plaintiff required two weeks of medical leave from October 5, 1999 to October 18, 1999, and medical treatment for job related stress and high blood pressure. (Compl. ¶ 25.) On October 10, 1999, Plaintiff submitted a letter to Wilhite and MVH in response to the counseling report issued by Wilhite. (Compl. ¶ 26.) On October 22, 1999, Plaintiff received a letter of termination from Wilhite on behalf of MVH. (Compl. ¶ 28.) In the termination letter, Wilhite blamed Plaintiff for causing safety

problems at MVH. (Compl. ¶ 29.) Plaintiff filed a charge of discrimination with the EEOC, and received a right to sue letter on February 13, 2001. (Compl. ¶ 31.)

On May 14, 2001, Plaintiff filed her Complaint in this Court, alleging wrongful termination based on national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e against all Defendants (Count I), wrongful termination based on national origin in violation of 42 U.S.C. §1981 against all Defendants, and supplemental state law claims for breach of implied employment contract against MVH (Count III), breach of implied covenant of good faith and fair dealing against MVH (Count IV), negligent supervision against MVH (Count V), defamation against all Defendants (Count VI), and intentional infliction of emotional distress against all Defendants. (Count VII). On January 22, 2002, a Stipulation of Dismissal was filed as to Counts I and II against Defendants Wilhite and Larsson, and as to Count IV. (Doc. 18.)

In the instant Motion, Defendant MVH moves to dismiss Count VII for failure to state a claim, contending that Plaintiff failed to allege sufficiently outrageous and extreme conduct and sufficiently severe injury to state a claim for intentional infliction of emotional distress. Plaintiff failed to file a response in opposition to this Motion.

## II. Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6).

A case should not be dismissed under FED. R. CIV. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir.1999). In accepting the complaint's allegations as true, the court must consider

whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Secretary*, 163 F. 3d 1150, 1152 (10th Cir. 1998).

**III.  Analysis**

Defendant MVH filed its Partial Motion to Dismiss on January 11, 2002. Plaintiff's response was due fourteen calendar days later. *See* D.N.M.LR-Civ. 7.6(a). Plaintiff failed file a response. The Local Rules provide that failure to serve or file a response in opposition to any motion constitutes consent to grant the motion. *See* D.N.M.LR-Civ. 7.5(b). By failing to file a response is opposition to the Partial Motion to Dismiss, Plaintiff consented to the granting of the motion. Therefore, Defendant MVH's Partial Motion to Dismiss should be granted under D.N.M.LR-Civ. 7.5(b).

In the alternative, the Motion should be granted on its merits. Defendant argues that the Complaint fails to allege facts sufficient to support a claim for intentional infliction of emotional distress. New Mexico law applies to this supplemental claim. *See BankOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F. 3d at 1103. Under New Mexico law, the Court must initially determine as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *See Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.1984).

Generally, in order to qualify under this standard, the recitation of the underlying facts to an average member of the community must arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Padwa v. Hadley*, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (1999) (*citing* Restatement (Second) of Torts § 46 cmt. d. (1965)). The conduct must be so extreme in degree as

4

to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. *See Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981). The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability under this theory. *See Padwa*, 127 N.M. at 419, 981 P. 2d at 1237.

The court in *Padwa* further explained that:

> By characterizing conduct as atrocious and utterly intolerable and beyond all possible bounds of decency, the Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage. It recognizes that, as part of the price of personal liberty, a free and democratic society must tolerate certain offensive conduct as well as some obnoxious or morally deviant behavior. Accordingly, the mere fact than an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability . . . Accordingly, caution, therefore, is the watchword when examining whether the tort of intentional infliction of emotional distress encompasses the facts of a case.

*Padwa,* 127 N.M. at 420, 981 P. 2d at 1238.

For the purposes of this analysis, all factual allegations of the Complaint are accepted as true and viewed in the light most favorable to Plaintiff. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F. 3d at 1236. In her Complaint, Plaintiff alleges that Defendant Wilhite began harassing her after Wilhite learned that Plaintiff's husband was African-American. Plaintiff asserts that this harassment consisted of a hostile work environment, remarks about "blacks, hispanics and gays," rude and insolent remarks directed at Plaintiff and rude remarks about Plaintiff's children. Plaintiff alleges that Wilhite verbally assaulted her, yelled at her, suggested she find work elsewhere, and issued a written counseling report accusing Plaintiff of inducing low employee morale, lacking leadership skills and being untrustworthy. Plaintiff states that Wilhite falsely accused her of causing safety lapses at

5

MVH in her termination letter. Finally, Plaintiff alleges that the discrimination and mistreatment caused her to emotionally breakdown and require medical treatment for stress and high blood pressure.

Accepting these allegations as true, the conduct of Defendant MVH's employees does not rise to the level necessary to permit recovery under the heightened threshold of the tort of intentional infliction of emotional distress. *Padwa,* 127 N.M. at 420, 981 P. 2d at 1238 (initiating sexual relations with friend's current wife, former wife, and former fiancée insufficient). The racial remarks and the verbal mistreatment alleged, even though offensive and abusive, are not so atrocious and utterly intolerable so as to progress beyond all possible bounds of decency so as to constitute intentional infliction of emotional distress under New Mexico law. *Id*. The distress alleged by Plaintiff in this case is no more severe than the distress suffered by many people who work in less than optimal conditions. As such, it is not actionable under New Mexico law as a claim for intentional infliction of emotional distress. *See id.* Plaintiff's allegations are insufficient to state a claim for intentional infliction of emotional distress under New Mexico law. Accordingly, Defendant MVH's Partial Motion to Dismiss should be granted.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Mesilla Valley Hospital's Partial Motion to Dismiss (Doc. 15), filed January 11, 2002, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Count VII is **DISMISSED**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**